UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------x

JOSEPH NORTON,

                    Appellant,              **MEMORANDUM & ORDER**
                                              24-CV-570
        -against-

ECP PROPERTY II LLC,

                    Appellee.

--------------------------------------x
ERIC KOMITEE, United States District Judge:

      This is an appeal from a bankruptcy court decision denying appellant Joseph Norton's motion for sanctions. Norton is in the real-estate business. Appellee ECP Property II LLC ("ECP") loaned Norton and two companies he managed approximately $2.4 million to develop a commercial property. Norton and the companies defaulted on that loan, and ECP began foreclosure proceedings in the Supreme Court of New York, Kings County.

      ECP won a judgment in that case, but the proceeds from the foreclosure were insufficient to pay off the debt. ECP thus continued litigating, including by initiating a separate suit in the same state court. In that case, ECP sought money damages based on its assertion that Norton and several separate entities that he and his family members co-managed had engaged in a civil conspiracy to deceive ECP.

      Norton then filed for Chapter 13 bankruptcy protection

in the United States Bankruptcy Court for the Eastern District of New York, which resulted in an automatic stay of the civil conspiracy case against *him.*  ECP proceeded with the civil conspiracy action, however, against Norton's state co-defendants.  This led Norton to move for sanctions against ECP in the bankruptcy court, alleging that ECP had violated the automatic stay.

The Bankruptcy Court denied Norton's motion.  Appendix ("App'x") 6, ECF No. 6-1.  Norton now appeals.  For the reasons that follow, the decision of the bankruptcy court is affirmed.

## I.    Background

### A.    ECP's State Court Actions

The following facts are drawn from ECP's complaint in the civil conspiracy action.  *See* Complaint, *ECP Property II LLC v. Joseph Norton, et al.*, No. 502651-2022 (N.Y. Sup. Ct. January 27, 2022), docket entry dated January 27, 2022.

Norton was the principal of two companies, Riverrock Nehemiah LLC ("Riverrock") and Guytech Management Services, Inc. ("Guytech").  App'x 79.  Separately, Norton and several of his family members co-managed multiple LLCs involved in the civil conspiracy action, including 35 Kermit Place LLC, one of the three entities referred to below as the "Kermit LLCs."  *Id.* at 80.

In 2008, ECP's predecessor in interest issued a loan

2

to Riverrock, Norton, and Guytech to develop commercial property in Brooklyn.  App'x 21, 24; Appellant's Br. 4, ECF No. 6.  After Norton and the co-borrowers defaulted, ECP filed a foreclosure action and obtained a judgment of foreclosure and sale in December 2015.  App'x 79-80.  A significant deficiency remained, however, and ECP sought a deficiency judgment.  *Id.*

While it pursued that judgment, ECP and Norton entered negotiations during which Norton allegedly overstated the quantum of assets available to satisfy the deficiency.  *Id.* at 78, 81-82.  The negotiations ultimately failed, and ECP continued with its deficiency action, obtaining a judgment in 2017.  *Id.* at 79.  But it remained unable to collect.

In 2022, ECP filed its civil conspiracy action, alleging that in overstating the relevant assets, Norton, his family members, and the LLCs they co-managed had conspired to "deprive ECP of its ability to collect the Judgment."  *Id.* at 87.  ECP also brought three claims for fraudulent conveyance against 35 Kermit Place pursuant to N.Y. Debt. & Cred. Law §§ 273 and 276 (McKinney).  *Id.*

**B.  Norton's Bankruptcy Filing**

In June 2023, while the civil conspiracy case remained pending, Norton filed for Chapter 13 protection.  *See* App'x 90. As required under Rule 1007(b)(1) of the Federal Rules of Bankruptcy Procedure, Norton submitted his Schedule A/B to the

3

bankruptcy court listing his assets and liabilities.  Schedule A/B, *In re Norton*, No. 23-BR-41862 (Bankr. E.D.N.Y. Sep. 10, 2023), ECF No. 23.  Relevant here, the schedule required Norton to list "any legal or equitable interest" in "an LLC, partnership, [or] joint venture."  *Id.* at 2-3.  Norton did not list any interest in Riverrock.  But on the same schedule, he claimed "[b]are legal title" in the three Kermit LLCs: 29 Kermit Place LLC, 35 Kermit Place LLC, and 32 Kermit Place LLC.  *Id.* at 3.  The listed Kermit LLCs are the same Kermit LLCs named in the civil conspiracy action, except for 32 Kermit Place, which appears to be a mistake on Norton's part.[1]

In response to the schedule's request for "specific information" regarding each entity, Norton provided the same response as to all three: "Estranged spouse claims 100 percent ownership of [each] company."  *Id.*  He listed his ownership percentage in each as zero; and described the current value of the holdings as zero dollars.  *Id.*

In the underlying state action, the parties agreed that the case had to be stayed against Norton given his bankruptcy filing.  But the parties disputed whether the case had to be stayed in its entirety.  App'x 48.

In August 2023, the presiding state Supreme Court

---

[1] ECP explains in its brief that the listing of 32 Kermit Place "is believed to be a typo, and actually to mean 31 Kermit Owner, LLC," one of the defendants in the civil conspiracy action.  Appellee's Br. 6 n.4, ECF No. 11.

4

Justice held that the action should be stayed as to Norton but not his co-defendants.  *Id.* at 97, 101.

## C.    Norton's Motion for Sanctions in Bankruptcy Court

Norton then moved for sanctions before the bankruptcy court, accusing ECP of violating the automatic stay by the continuation of the civil conspiracy action against Norton's co-defendants.  *Id.* at 61; *see* 11 U.S.C. § 362(k) (party injured by a "willful violation" of the stay may seek damages).  A "creditor willfully violates Section 362 when it knows of the filing of the petition . . . and has the general intent simply to perform the act found to violate Section 362 . . . ."  *In re Weber*, 719 F.3d 72, 82 (2d Cir. 2013).[2]

Following a hearing, the presiding judge observed that Norton held only "bare legal title to the [co-defendant] LLCs," and that the bankruptcy estate does not include "property of others in which the debtor has some minor interest such as . . . bare legal title."  App'x 6, 4-5.  Norton does not challenge either of these conclusions on appeal.

The bankruptcy court went on to observe that the automatic stay's application is "limited to debtors" and does not "encompass non-bankrupt co-defendants" unless there would be an "immediate adverse economic consequence for the debtor's

---

[2] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

estate" from allowing the case to proceed against them. *Id.* at 5. The court identified no such consequences. *Id.* The court also noted that Norton had not requested that it "impose a stay with respect to any individual or entity other than the Debtor in this case." *Id.* at 6. The court concluded that ECP had not violated the automatic stay against either Norton or his co-defendants, and that sanctions therefore were not warranted. *Id.*

Norton appealed.

Here, Norton contests the bankruptcy court's written order and its "oral decision" at the hearing. *Id.* at 1. However, Norton failed to provide a transcript of that hearing on appeal. *See Frostbaum v. Ochs*, 277 B.R. 470, 473 n.1 (E.D.N.Y. 2002) ("[I]t is the appellant's obligation to supply any part of the lower proceedings transcript which is necessary to the adjudication of his claim on appeal."). We review only the appellate record provided by Norton. *See In re Emmons-Sheepshead Bay Dev. LLC*, 518 B.R. 212, 218 (E.D.N.Y. 2014).

## II. Standard of Review

This Court has jurisdiction to hear appeals of final orders from the bankruptcy court. 28 U.S.C. § 158(a)(1). "A bankruptcy court's decision on sanctions is reviewed for abuse of discretion, a standard that is necessarily met by a ruling that rests on an erroneous view of the law or on a clearly

6

erroneous assessment of the evidence." *In re Fogarty*, 39 F.4th 62, 69 (2d Cir. 2022).  The bankruptcy court's conclusions of law are reviewed *de novo*.  *Id.*

### III.  Discussion

**A.    The Automatic Stay Did Not Bar the Fraudulent Conveyance Claims Because They Are Not Actions Against Norton's Property**

Norton argues that the fraudulent conveyance claims in the state action are property of his estate and that, as a result, the automatic stay barred ECP's continued litigation of those claims.  Appellant's Br. 11-14.

### 1.    Norton's Estate Does Not Include 35 Kermit Place or The Claims Against It

Norton asserts that ECP's fraudulent conveyance claims against 35 Kermit Place are "an asset of the bankruptcy estate." *Id.* at 11.  According to Norton, ECP thus "lost Standing to commence Fraudulent Conveyance action [sic] upon the Debtor filing Bankruptcy."  *Id.*  His "standing" argument does not implicate jurisdiction, but statutory authority in bankruptcy. *In re Trib. Co. Fraudulent Conv. Litig.*, 946 F.3d 66, 75-76 (2d Cir. 2019).[3]  Specifically, Norton argues that "the combination

---

[3] Various courts have observed that the term "standing" is a misnomer, of sorts, in this context because the doctrine at issue does not affect the reviewing court's power to hear the case (as an Article III standing problem would).  *See, e.g.*, *In re Wilton Armetale*, 968 F.3d 273, 280 (3d Cir. 2020) (doctrine implicates only the "statutory authority" to maintain an action under the Bankruptcy Code) (citing *Grede v. Bank of N.Y. Mellon*, 598 F.3d 899, 900 (7th Cir. 2010)).

of two provisions [Sections] 541 and 544 creates this unique situation" whereby "the claims of the creditors against the debtor" can only be pursued by the trustee.  Appellant's Br. 11; *see* 11 U.S.C. §§ 541, 544.

Under Section 541 of the Bankruptcy Code, a debtor's "legal [and] equitable interests" in property, "as of the commencement of the case," constitute "property of the estate." The property of the debtor, however, becomes part of the estate "only to the extent of a debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold."  *Id.* § 541(d); *see In re Rodgers*, 333 F.3d 64, 68 (2d Cir. 2003) ("[T]he estate's legal and equitable interests in property rise no higher than those of the debtor.").[4]

The estate "does not include property of others in which the debtor has some minor interest such as a lien or bare legal title."  *In re Howard's Appliance Corp.*, 874 F.2d 88, 93

---

[4] Norton also relies on Section 544, which simply allows a trustee to "avoid any transfer of an interest of the debtor . . . voidable under applicable [state] law by a creditor holding an unsecured claim."  Section 544(b)(1).  For this provision to apply, the trustee must show, among other things, that it has a claim to "recover assets *conveyed by the debtor* to a transferee."  *In re Allou Distributors, Inc.*, 392 B.R. 24, 34 (Bankr. E.D.N.Y. 2008) (emphasis added); *see also Christy v. Alexander & Alexander of New York Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey)*, 130 F.3d 52, 55 (2d Cir. 1997) (trustee may avoid transfers "made by the debtor").  Norton has not shown that this provision applies to his case: the fraudulent conveyance claims seek to recover assets conveyed by 35 Kermit Place, not Norton.

(2d Cir. 1989); *see also United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204 n.8 (1983) (same). For example, if a debtor files for bankruptcy after a foreclosure sale but before the deed is transferred, the foreclosed property does not become part of his estate because the debtor has no equitable interest in it. *Rodgers*, 333 F.3d at 69.

Under this standard, Norton's claimed interest in 35 Kermit Place did not become part of his estate under Section 541. As to that entity, Norton scheduled only "bare legal title." There may be reason to doubt the accuracy of Norton's claim to "bare" legal title: after Norton brought his sanctions motion, the bankruptcy trustee filed a motion to dismiss, noting that Norton "was unwilling or unable to provide any explanation" as to his interest in the Kermit LLCs. Trustee's Mot. to Dismiss 1, *In re Norton*, No. 23-BR-41862, ECF No. 35. Nevertheless, Norton *claimed* only bare legal title in 35 Kermit Place. The bankruptcy judge adopted his claim, and he does not contest its correctness here. Thus, that entity did not become part of his estate. *See Howard's Appliance Corp.*, 874 F.2d at 93.

Consequently, the fraudulent conveyance claims against 35 Kermit Place do not belong to Norton's estate either. "[A] trustee in bankruptcy . . . may only pursue claims that belong to the estate." *In re RSL COM PRIMECALL, Inc.*, No. 01-11457,

2003 WL 22989669, at *4 (Bankr. S.D.N.Y. Dec. 11, 2003) (citing *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416, 429 (1972)); *see also In re Magnesium Corp. of Am.*, 399 B.R. 722, 757 (Bankr. S.D.N.Y. 2009) (same).

       2.    The Automatic Stay Did Not Bar ECP's Fraudulent <u>Conveyance Claims</u>

Norton next argues that the automatic stay barred the fraudulent conveyance claims against 35 Kermit Place. According to him, the automatic stay applied here even though the case had already been stayed against the debtor. Appellant's Br. 13.

Under Section 362(a)(1), a bankruptcy petition triggers the automatic stay. Specifically, the petition "operates as a stay" of "the commencement or continuation . . . of a[n] . . . action or proceeding against the debtor . . . or to recover a claim against the debtor that arose" prior to the petition for bankruptcy. 11 U.S.C. § 362(a)(1). However, "stays pursuant to § 362(a) are limited to debtors and do not," generally speaking, "encompass non-bankrupt co-defendants." *Nippon Fire & Marine Ins. Co. v. Skyway Freight Sys., Inc.*, 235 F.3d 53, 58 (2d Cir. 2000). Chapter 13, moreover, "limits the eligibility of debtors to individuals"; it does not extend to companies. *In re McCormick*, 381 B.R. 594, 597 (Bankr. S.D.N.Y. 2008). So, when a Chapter 13 debtor lists an LLC on his

schedule, the entity does not become a "co-debtor." *See id.*

Norton's contention that the automatic stay was violated fails under this standard. The conspiracy action was stayed against Norton under Section 362. So, for the automatic stay to apply, Norton must show that the action against 35 Kermit Place sought to "recover a claim against the debtor." Section 362(a)(1). Norton has not done so. When a debtor concedes that his interest in an entity has no value, the stay does not extend to claims against that entity. So, for example, one bankruptcy court held that an automatic stay did not extend to an LLC in which the debtor held shares because the "debtor's shares in the LLC have no value according to his petition." *McCormick*, 381 B.R at 603; *see also Rodgers*, 333 F.3d at 69 (automatic stay did not bar transfer of title in property as to which the debtor held only bare legal title). Here, Norton valued his ownership interest in Kermit Place 35 at zero, and he does not now argue otherwise. Thus, the fraudulent conveyance claims are *no*t claims "against the debtor" under Section 362.

Norton invokes two exceptions to this rule.

First, Norton contends that the Second Circuit's decision in *In Re Colonial Realty*, 980 F.2d 125, 132 (2d Cir. 1992), compels us to find that the stay was violated. Appellant's Br. 13. There, the FDIC alleged that a bank received fraudulently transferred assets from a debtor.

11

*Colonial Realty*, 980 F.2d at 132.  The automatic stay extended to the action because "[a]bsent a claim against the debtor, there [was] no independent basis for the action against the transferee."  *Id.*  Thus, a claim asserted by the debtor's creditor(s) against third-party transferees must be stayed when the debtor made the transfer and the claim depends on the debtor's alleged fraud.  *See Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199, 209 (2d Cir. 2014).

The principle set forth in *Colonial Realty* does not apply here.  As explained above, ECP asserted that 35 Kermit Place fraudulently conveyed the assets at issue.  Thus, ECP's conveyance claims did not seek to recover against the debtor.

Second, Norton relies on the Second Circuit's decision in *Queenie v. Nygard*, but that case is also inapposite. Appellant's Br. 20; *see Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 287 (2d Cir. 2003).  There, the court held that a stay generally does not extend to co-defendants, but could be extended to cover "lawsuits which threaten" "immediate adverse economic consequences for the debtor's estate."  *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 328 F. Supp. 2d 439, 442 (S.D.N.Y. 2004) (citing *Queenie*, 321 F.3d at 287).  *Queenie* concerned a Chapter 11 debtor who argued that a stay should cover his "wholly owned" corporation.  *Queenie*, 321 F.3d at 287.  The debtor established that the adjudication of a claim against the

12

corporation would inflict an "immediate adverse economic impact" on the debtor's estate, and the court, on that basis, extended the stay to it. *Id.* at 288. For this limited exception to apply, the debtor bears the burden, *see In re Adelphia Commc'ns Corp.*, 298 B.R. 49, 54 (S.D.N.Y. 2003), to put forth "real evidence" showing an "actual impact" that a non-extension would have on the debtor. *Stih v. Rockaway Farmers Mkt., Inc.*, 656 B.R. 308, 314 (E.D.N.Y. 2024).

As the bankruptcy court correctly held, Norton has not made the required showing: he has adduced no evidence that ECP's claims against 35 Kermit Place would have an "immediate adverse economic impact" on his estate. Thus, *Queenie*'s limited exception does not apply.

**B.    *In Re Fogarty* Did Not Require Extension of The Automatic Stay**

Norton next argues that under the rule set forth in *Fogarty*, 39 F.4th at 76, the automatic stay barred the continuation of all the claims against Norton's non-debtor defendants, even after the case was stayed as to him. *See* Appellant's Br. 15.

In *Fogarty*, a debtor filed for bankruptcy four days before a foreclosure sale of property owned by an LLC in which she held a 99 percent interest. The creditor proceeded with the

13

sale on the basis that the LLC, not the debtor, owned the property.  *Fogarty*, 39 F.4th at 76.

The Second Circuit held that the automatic stay was violated because the debtor "remained a party to the Foreclosure Action when the Sale occurred . . . ."  *Id.*  The court emphasized that the judgment in the foreclosure proceeding "bound" Fogarty.  *Id.* at 73.  In this context, Section 362 "demands a bright-line rule": "so long as the debtor is a named party in a proceeding or action, the automatic stay applies to the continuation of that proceeding, and to the enforcement of, a judgment rendered in that proceeding."  *Id.*  The court went on to contrast the facts before it with those in *Queenie*, and explained that unlike in that case, "the Action was not stayed as to Fogarty."  *Id.* at 76.  Had it been, the court reasoned that the "situation would perhaps be closer to the scenario presented in *Queenie* . . . ."  *Id.*

Here, in contrast, the civil conspiracy claim against Norton was stayed.  Following the stay, ECP filed an amended complaint expressly acknowledging that the action was stayed against him.  *See* App'x 20; *Cf. Fogarty*, 39 F.4th at 73.  Moreover, Fogarty asserted a possessory interest in the property at issue (which was part of her estate), which Norton does not claim with respect to any of his co-defendants or assets in the conspiracy action here.  Thus, the bright-line rule announced in

14

*Fogarty* does not apply to the record before us.  Rather, the situation here is closer to that presented in *Queenie.*  But as discussed above, Norton has not shown that the fraudulent conveyance claims carry an "immediate adverse economic consequence for [his] estate."  *Queenie*, 321 F.3d at 288.  Nor has he even argued, let alone established, that the civil conspiracy claims against his other state co-defendants would have such an impact.

### IV.   Conclusion

The decision denying sanctions for ECP's alleged violation of the automatic stay is affirmed.  In light of the Court's "decision . . . on the merits," ECP's motion to strike Norton's reply brief as untimely, ECF No. 13, "is denied as moot."  *Franco v. Walsh*, 73 Fed. App'x 517, 519 n.2 (2d Cir. 2003).  The Clerk is respectfully directed to enter judgment and close this case.


        SO ORDERED.




                        /s/ Eric Komitee
                        ERIC KOMITEE
                        United States District Judge


Dated:     April 14, 2026
           Brooklyn, New York



15